**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| POET BIOREFINING NORTH MANCHESTER LLC,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF COMMISSIONERS OF WABASH COUNTY INDIANA,<br><br>Defendant. | CASE NO. 3:26-CV-291-CCB-SJF |

**OPINION and ORDER**

Before the Court is Defendant Wabash County's Rule 56(d) Motion in Response to Plaintiff's Motion for Partial Summary Judgment. [DE 53]. As set forth below, because this Court's jurisdiction may be predicated on the facts presented in POET's second summary judgment motion, and because no discovery has yet occurred in this litigation, Wabash County's Rule 56(d) motion is **GRANTED**.

## I. BACKGROUND

The claims in this action involve two ordinances enacted by the Wabash County Board of Commissioners. POET brings claims pertaining to both ordinances, with the first ordinance underpinning its Complaint and the second ordinance underpinning its Supplemental Complaint. Both ordinances govern carbon capture and sequestration ("CCS") projects in Wabash County.

**a. The Initial Complaint**

On March 3, 2026, POET filed this action in relation to Wabash County's Moratorium Ordinance that purportedly prohibited CCS projects. POET is developing a CCS project at its facility in Wabash County. [DE 1 at 7]. POET alleges the Moratorium Ordinance: (1) violated the Fifth Amendment's takings clause (count I); (2) violated the Indiana Home Rule Act (count II); and (3) was preempted by Indiana law (count III). [DE 1 at 16–20]. POET seeks declaratory and injunctive relief on the state law claims, while seeking injunctive and compensatory relief for its Fifth Amendment claim. [DE 1 at 19, 20].

At the earlier stages of this litigation, the parties agreed that discovery and initial disclosures should be stayed until the Court ruled on their dispositive motions. [DE 27; DE 28]. The dispositive motions then included Wabash County's motion to dismiss, [DE 25], and POET's first motion for partial summary judgment. [DE 32]. Both motions pertaining to the Complaint remain pending. Wabash County seeks to dismiss count I, the takings claim, which it argues will leave the Court without jurisdiction over the state law claims. [*See* DE 25]. POET then sought summary judgment on the state law claims. [DE 32]. Wabash County resisted summary judgment, arguing in part that POET lacks standing to pursue a declaratory judgment on the state law issues presented. [*See* DE 41 at 2–6]. The County disputes any assertion that the Moratorium Ordinance was the sole cause of POET being denied rights to its CCS project. [DE 40 at 4]. The County argues that POET's deficient permitting applications harmed its CCS project. [*See* DE 41 at 2–5]. The County concludes that assessing the validity of the Moratorium Ordinance

under state law would amount to an advisory opinion that POET does not have standing to seek. [*See* DE 41 at 5–6]. The County thus implicated this Court's subject matter jurisdiction under Article III. [*Id.*].

**b. The Supplemental Complaint**

On September 2, 2026 (six months after filing the Complaint), POET filed its Supplemental Complaint that included six additional claims, counts IV–IX. [DE 46]. The supplemental claims relate to Wabash County passing an additional "CCS Ordinance." [DE 44 at 1–2]. The CCS Ordinance appears to have superseded the Moratorium Ordinance, [DE 46 at 13], and allegedly creates onerous regulatory requirements for CCS projects. [DE 48 at 2].

The Supplemental Complaint alleges the CCS Ordinance: (1) violates the Fifth Amendment's takings clause (count IV); (2) violates the First Amendment (count V); (3) violates the Indiana Home Rule Act (counts VI & VII); (4) is preempted by Indiana law (count VIII); and (5) does not apply to POET by way of Indiana Code, Section 36-7-4-1109 (count IX). [DE 46]. POET seeks declaratory and injunctive relief on the state law claims and seeks compensatory and injunctive relief for its constitutional claims. [DE 46 at 8, 9].

POET then moved for partial summary judgment on the supplemental state law claims, counts VI–VIII ("second summary judgment motion"). [DE 47].[1] POET argues

---

[1] Wabash County also moved to dismiss the Supplemental Complaint. [DE 51]. The County argues that the federal claims should be dismissed for failure to state a claim and thus the Court should relinquish supplemental jurisdiction over the state law claims. [*Id.*].

that compliance with the CCS Ordinance is practically impossible. [DE 49 at 5]. POET relies on the sworn declarations of two of its employees, Matt Braun and Dillon Oakes. [DE 47-1; DE 47-2]. Those employees declare that the CCS Ordinance imposes onerous financial costs and creates impossible zoning set-back requirements. [DE 47-1 at 5–6, 3]. One employee "directed the preparation" of two maps showing potential locations in Wabash County where a CCS project could be located. [DE 47-2 at 3]. The employees assert the set-back requirements prevent any CCS project from existing in Wabash County. [DE 47-2].

Wabash County responded by filing the Rule 56(d) motion before the Court. Wabash County asks the Court to defer ruling on the second summary judgment motion for 120 days to allow the County to conduct discovery. [DE 54 at 5]. Specifically, the County seeks to depose and serve written discovery on the two employees that POET relies on in its second summary judgment motion. [DE 54 at 5]. The County seeks to depose the two employees to test the accuracy of their conclusions. [DE 54-1 at 2 ("Declaration of Lisa A. Baron")]. POET responded by raising numerous arguments. POET first argues that the state law claims can be disposed of entirely on the face of the CCS Ordinance, without the need for discovery. [DE 55 at 2]. POET also raises the County's noncompliance with Local Rule 6-1. [*Id.* at 3]. POET next argues that the County can obtain the information it needs to respond to the second summary judgment motion without deposing the employees. [*Id.* at 4]. POET supports its position by noting that the map information was sourced through public records. [*Id.*]. Wabash County replied, arguing that the map and other supporting facts are vaguely supported

and thus require discovery before being disputed and submitted for summary judgment. [DE 57]. Wabash County's Rule 56(d) motion is now ripe for ruling.

## II. Rule 56(d) Standard

"[A] party may file a motion for summary judgment at any time until 30 days before the close of all discovery." Fed. R. Civ. P. 56(b). "Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Fed. R. Civ. P. 56(b), advisory committee notes, 2010 Amendments. If a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer ruling on the motion or allow the nonmovant time to obtain discovery. Fed. R. Civ. P. 56(d). A nonmoving party must have an opportunity to take "meaningful discovery" before summary judgment may be granted. *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019). The mere fact that discovery is incomplete, however, is not enough to stall summary judgment. *Id.* at 864. "A party seeking relief under Rule 56(d) must show . . . more than a fond hope" that further discovery will yield good evidence. *Id.*

A Rule 56(d) affidavit is not a "shield that can be raised to block a motion for summary judgment without" some showing that the nonmovant's position has merit. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 886 (7th Cir. 2005) (citing *United States v. On Leong Chinese Merch. Assoc. Bldg.*, 918 F.2d 1289, 1294–95 (7th Cir. 1990)). An affidavit must present evidence and facts that will bear weight on the outcome of summary

judgment, and not merely swear that further discovery will be useful. *See Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000) (quoting *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1512 (10th Cir. 1992)). A Rule 56(d) affidavit must be accompanied with an explanation of how the additional, discoverable "information would allow the nonmovant to proceed to trial." *F.C. Bloxom Co. v. Tom Lange Co. Int'l*, 109 F.4th 925, 936 (7th Cir. 2024).

A Rule 56(d) motion is properly denied when the party failed to diligently pursue discovery, failed to submit an affidavit, or when the requested discovery appears futile. *Smith*, 933 F.3d at 866, 864. A Rule 56(d) motion is often properly granted, however, when the summary judgment motion is filed before the close of discovery, and when summary judgment is sought so early in the litigation that the other party has no realistic opportunity to pursue discovery. *Id.* at 865 (explanatory citations omitted). *Smith* is thus explicit that a party should be afforded access, at minimum, to material discovery procedures before summary judgment. *Woods* and *F.C. Bloxom Co.* implicitly recognize the same, and demand scrutiny after an initial discovery period has elapsed.

## III. Discussion

### a. POET's Procedural Argument

As an initial matter, POET's response throws in a procedural argument that misinterprets the Court's Local Rules. Local Rule 6-1(a) typically applies to motions to extend routine procedural deadlines: like answer deadlines, briefing deadlines, and discovery deadlines. [*See* DE 22; DE 35]; *see, e.g.*, *Lopez v. Bridgestone Americas Tire*

*Operations, LLC*, No. 11-cv-54, 2012 WL 13047287, at *2 (N.D. Ind. May 30, 2012). Local Rule 6-1(a) does not, however, apply here. For one, a successful Rule 56(d) motion can result in summary judgment being denied. Fed. R. Civ. P. 56(d)(1). Thus, it is not a mere extension device. Although a Rule 56(d) motion may sometimes have the effect of extending a responsive briefing deadline, such a motion is more appropriately governed by Local Rule 7-1(d)(3). *Compare* N.D. Ind. L.R. 7-1(d)(3) ("Other Motions"); *with* N.D. Ind. L.R. 7-1(d)(4) ("Extensions"). Indeed, the "good cause" standard that applies to briefing extensions differs from the Rule 56(d) criteria. *See supra* section II. Local Rule 6-1(a) requires a party to seek agreement, but it also requires a party to state the original deadline and the requested deadline, which was not applicable here without a discovery deadline. In all, Local Rule 6-1 does not apply to a Rule 56(d) motion. Thus, Wabash County did not need to confer before filings its motion.

**b. Rule 56(d) Analysis**

The motion should be granted because the facts which Wabash County seeks to discover pertain to this Court's jurisdiction. A party invoking a federal court's jurisdiction bears the burden of establishing standing under Article III. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 411–12 (2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). At summary judgment, standing cannot be established through the allegations in a complaint. Instead, a party must set forth specific facts, through affidavit or otherwise, that establish an Article III case or controversy. *Id.* An opposing party retains the right to dispute facts at summary judgment, N.D. Ind. L.R. 56-1(b)(2), including those pertaining to Article III jurisdiction.

POET's factual statements in its second summary judgment motion, if undisputed, may establish the harm caused by the CCS Ordinance. Those factual statements thus implicate POET's standing to seek a declaratory judgment and injunctive relief on the state law claims. Contrary to what POET claims in its response, POET's second summary judgment motion cannot be disposed of on the face of the CCS Ordinance alone. Assessing the CCS Ordinance at this stage might exceed the Court's constitutional grant of jurisdiction over cases and controversies and therefore be improper.

The Court notes that Wabash County previously raised the issue of Article III standing as it pertained to the state law claims. Although Wabash County did not explicitly reference Article III standing in its 56(d) motion, the Court recognizes that any opposition to POET's factual statements would again implicate this Court's jurisdiction. Wabash County claims the employee declarations are conclusory and vaguely supported. [DE 57 at 7]. The Court interprets Wabash County's position as skepticism of the effects of the CCS Ordinance. The parties have already disputed the character and extent of both ordinances. Wabash County argues the ordinances are valid zoning regulations, [DE 41 at 18], while POET disputes that interpretation. [DE 49 at 14]. As to the maps, how the set-back requirements are modelled may impact an interpretation of how the CCS Ordinance functions, i.e., whether it is a zoning regulation or something prohibited by the Home Rule Act. The extent to which the CCS Ordinance affects POET is thus material to its standing and the Court's future ruling on the state law claims.

Wabash County's inexplicit connection to standing, although curious, does not obviate the need for formal discovery.

Second, the Court notes that POET filed its second summary judgment motion thirteen days after filing the Supplemental Complaint and less than one month after the CCS Ordinance was enacted. [DE 51; DE 46; DE 46 at 1]. There is nothing per se improper in seeking a swift summary judgment ruling, but this would have left Wabash County with twenty-eight days to assess POET's statement of facts and exhibits, respond to the legal arguments, and proffer its own statement of facts, all while also seeking to dismiss the Supplemental Complaint. N.D. Ind. L.R. 56-1(b). In the Court's view, this timeframe is insufficient to properly resolve the supplemental dispute without any formal discovery.

Simply put, discovery is procedurally proper here. Beyond this Court's own discretion to allow for *further* discovery, the Court must allow *some* meaningful discovery into relevant issues. *Smith*, 933 F.3d at 866. No discovery has occurred in this action and no answer to either complaint has been filed yet. POET's analogy to a case from the Eighth Circuit Court of Appeals is not persuasive. [DE 55 at 8]. The movant there lamented that no depositions had occurred—not that no discovery at all had occurred. *Hamilton v. Bangs, McCullen, Butler Foye & Simmons, LLP*, 687 F.3d 1045, 1050 (8th Cir. 2012). In *Hamilton*, the defendants answered the complaint and six months later discovery was suspended. *Id.* at 1048. But again, Wabash County has not filed an answer and no discovery has occurred. This case is instead controlled by the Seventh

Circuit's principle in *Smith* and the Rule 56(d) committee notes, i.e., some bare minimum discovery procedures should occur before assessing summary judgment.

Extinguishing all avenues to deny a 56(d) motion at this early stage, the Court cannot find that Wabash County failed to diligently pursue discovery. *Smith*, 933 F.3d at 866. POET argues that Wabash County does not need discovery because it already has the access needed to replicate the maps. [DE 55 at 3]. But Wabash County is not required to complete independent research to oppose summary judgment. And Wabash County cannot dispute POET's facts by citing a lack of knowledge. *See Del Signore v. Nokia of Am. Corp.*, 672 F. Supp. 3d. 560, 564 (N.D. Ill. 2023). POET's bare assertion that Wabash County knows the maps are accurate is not backed with any exhibit or citation. [DE 55 at 10]. Contrary to POET's unsupported allegations that the County seeks only to delay, [DE 55 at 4, 10], POET's employee-declarations raise issues worth developing through discovery. As the County points out, Dillon Oakes' declaration states that he "directed the preparation" of the maps. [DE 47-2 at 3]. Mr. Oakes, who is the Director of Strategic Development for POET, does not swear who actually prepared the maps and what their credentials are. [DE 47-2]. Wabash County is entitled to an opportunity to explore POET's modelling of the CCS Ordinance.

All told, discovery is the usual procedure to ensure a fair outcome. *Signature Flight Support LLC v. Johnson Controls, Inc.*, 759 F. Supp. 3d 912, 916 (E.D. Wis. 2024) ("The usual way for a defendant to find out more about an adequately pleaded claim is to take discovery"). "[D]iscovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Bilek v. Fed. Ins. Co.*, 344 F.R.D.

484, 490 (N.D. Ill. 2023). "[D]iscovery rules exist to ensure that cases are not litigated in the dark." *D.R. Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp 3d. (N.D. Ill. 2021) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "The purpose of discovery is integral to the quest for truth and the fair adjudication of [judgment]." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1024 (N.D. Ill. 2017) (citing *Taylor v. Illinois*, 484 U.S. 400, 419, 430 (1988) (Brennan, J., dissenting)). Thus, Wabash County should be permitted to conduct discovery into POET's factual allegations so that it can properly respond to them at summary judgment. Because the County seeks to discover facts predicating this Court's jurisdiction, which must be proven at a trial, the Court's resolution of these matters will be better served by enabling discovery into the effects of the CCS Ordinance.

## IV. CONCLUSION

For the reasons discussed, Wabash County's Rule 56(d) Motion in Response to Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. [DE 53]. The Court **HOLDS IN ABEYANCE** POET's second motion for partial summary judgment, [DE 47]. The Court will allow 120 days for the parties to conduct discovery into the effect of the CCS Ordinance, including deposing Matt Braun and Dillon Oakes. The discovery period will end **March 16, 2027**. Wabash County is **ORDERED** to respond to POET's second summary judgment motion by **April 13, 2027.**

To effectuate this Order, and in accordance with Rule 16 of the Federal Rules of Civil Procedure, this cause is now **SET** for a Telephonic Preliminary Pretrial Conference

before the undersigned Magistrate Judge, to be held on **December 2, 2026 at 10:30 a.m. EST**.

To connect to the conference, parties should dial 833-568-8864, enter meeting ID number 160 4237 7854#, push # to skip entry of a participant ID and enter passcode 356255# at least five minutes before the conference start time.

At the conference, the parties should be prepared to address the following:

1. A proposed discovery plan under Fed. R. Civ. P. 26(f) to be filed no later than **November 30, 2026**. The parties' discovery plan should address the scope of discovery necessary to address the effects of the CCS Ordinance. Failure to timely file the report and the proposed discovery plan may result in the imposition of sanctions in accordance with Fed. R. Civ. P. 16(f). At or before the conference, it is anticipated that the Court will approve or modify the Report of Parties' Planning Meeting.
2. The proposed discovery plan should include a discovery deadline no later than 120 days from the date of this Order—March 16, 2027. As stated, discovery at this stage will be limited to Counts VI–VIII of the Supplemental Complaint regarding the effects of the CCS Ordinance.

**SO ORDERED** this 16th day of November 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge